IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 22-CR-01561 MIS |
| ) | |
| MICHAEL RIVERA, ) | |
| ) | |
| Defendant. ) | |

**UNITED STATES' RESPONSE TO MOTION FOR
JUDGMENT OF ACQUITTAL OR NEW TRIAL**

The United States hereby responds to Defendant's Motion for Judgment of Acquittal Under Rule 29 or Motion for New Trial Under Rule 33 Fed. R. Crim. Proc. (Doc. 147). Defendant has failed to demonstrate how either a judgment of acquittal or a new trial is required by law in this case. Contrary to Defendant's claims, the Court's admission of expert testimony at trial was proper and did not have any improper prejudicial effect on the jury. Accordingly, the Court should deny Defendant's motion and uphold his jury conviction.

**I.    BACKGROUND**

Michael Rivera was convicted by a jury on July 11, 2023, of three counts, including coercion or enticement of a minor and production of child pornography. Doc. 145. Central to the case was the question of whether the defendant had asked for pornographic images from the minor victim and received those images via text message.

Prior to trial, the United States notified the defendant of its intent to call three expert witnesses to assist the jury. The United States filed its notice of expert witness testimony per Federal Rule of Criminal Procedure 16 on June 15, 2023. Doc. 81. This notice identified 1)

1

Las Cruces Police Department Senior Police Officer and Homeland Security Investigation Task Force Officer ("TFO") Max L. Weir as an expert in forensic examination of electronic devices; 2) Federal Bureau of Investigation Supervisory Special Agent ("SSA") Daniel O'Donnell as an expert in grooming behaviors and dynamics; and 3) FBI Special Agent Sean Macmanus as an expert in phone toll analysis and Google records. *Id.* The notice further provided additional information including the specific topics on which the experts were anticipated to testify and the experts' curriculum vitae.

At trial, these experts provided testimony in accordance with the United States' expert notice. TFO Weir testified regarding the steps he took to examine the minor victim's cell phone, the images and videos he found on that cell phone, and what he could tell about the visual depictions from where he found them on the cell phone. SSA O'Donnell testified regarding grooming. SA Macmanus testified about the defendant's Google user records, historical call detail records provided by Verizon for both the defendant's and minor victim's phone numbers, how Verizon sends and logs cellular communications, and what he could tell about the communication between the two phone numbers that occurred on the dates alleged in the indictment.[1]

During Defendant's cross-examination of these experts, it became clear that Defendant

---

[1] The United States notes that Defendant's description of SA Macmanus's testimony in the "Background" section of his motion (Doc. 147 at pp. 1-3) is not accurate. At no point did SA Macmanus testify to facts that were "contradicted by documents provided by Verizon" or testify that his opinion had "changed" since the Daubert hearing. Further, the United States disagrees with Defendant's assertion that SA Macmanus testified that his conclusion that a change in file type or size was possible was "only supported by a theory provided by Verizon." *Id.* On the contrary, SA Macmanus also described for the Court the other training and experience he has that supports that conclusion.

was suggesting that the pornographic video found on the minor victim's phone could not possibly be the same video that the defendant received from the victim, mainly due to the fact that the file found on the phone was of a different size and format than that recorded in the Verizon records.   SA Macmanus testified to this possibility, noting that through his training and experience, as well as through conversations with a Verizon supervisor, he knows that Verizon often compresses files into different sizes or formats to transmit the file over the Verizon network.   Accordingly, it is possible that a video taken on a cell phone is one particular format or size, but the same video as recorded by Verizon lists a different format or size, despite it being the same content.   The United States then recalled TFO Weir, who explained that over the previous weekend, he had conducted an experiment whereby he sent a video from his son's iPhone to his own Samsung phone via text message.   TFO Weir explained that the video he had recorded on the iPhone was in an .mp4 format, but the video he received on the Samsung was a .3GPP format.   TFO Weir confirmed that the content in the video was the same despite it being in a different file format.

Defendant now argues that this expert testimony violated Federal Rule of Evidence 702, the testimony was more prejudicial than probative, and that the experiment conducted by TFO Weir was confusing and more prejudicial than probative.   Doc. 147.   None of these arguments are persuasive.

## II.   LEGAL STANDARD

Per Federal Rule of Evidence 702, an expert witness may "testify in the form of an opinion or otherwise" if the following conditions are met:

> (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(2) the testimony is based on sufficient facts or data;

(3) the testimony is the product of reliable principles and methods; and

(4) the expert has reliably applied the principles and methods to the facts of the case."

As Defendant notes, the expert's testimony does not have to be based on the expert's firsthand knowledge. An expert "may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703.

Turning to the exclusion of relevant evidence, Federal Rule of Evidence 403 provides that the "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

**III.   ARGUMENT**

    **a. Special Agent Macmanus's testimony did not violate FRE 702**

As far as the United States can ascertain, Defendant's chief complaint here is that SA Macmanus's testimony regarding the fact that Verizon can alter file formats was not based on any facts or data. That is simply not true, as even the defendant's own motion acknowledges. SA Macmanus testified that he received information from a Verizon supervisor confirming that Verizon can alter file formats and sizes when transmitting the file over the Verizon network. It is hard to imagine a more reliable source of information regarding how the Verizon network operates than a high-level Verizon employee intimately familiar with the inner workings of the network. Per Federal Rule of Evidence 703, as an expert witness, it is perfectly appropriate for SA Macmanus to testify to information of which he has been made aware. That is what occurred in this case. SA Macmanus also testified outside the presence of the jury that the

information he received from Verizon confirmed information he already knew from various trainings he has received from telecommunications and technology companies, as well as his own personal experience.   Accordingly, SA Macmanus's testimony *was* based on sufficient facts or data.

Defendant also seems to characterize SA Macmanus's testimony on this topic as an opinion; but what SA Macmanus testified to is not an opinion.   There is no reasonable debate about it—it is a fact that Verizon has the ability to, and often does, change the format or size of a file to transmit the material over the network.   SA Macmanus did not provide any opinions about whether that actually did occur in this case.   He testified that it was possible, and he testified that the inconsistencies between the file size and format between the video found on the victim's phone and the video recorded in the Verizon records do not necessarily mean that it is not the same video.   To the extent that is an opinion, it is directly supported by facts coming from Verizon and SA Macmanus's prior training and experience.   SA Macmanus need not provide any other facts or data.

Accordingly, SA Macmanus's testimony was properly admitted, and its admission is not sufficient grounds to order an acquittal or new trial.

### b. The probative value of SA Macmanus's testimony was not substantially outweighed by the danger of unfair prejudice.

Defendant next argues that SA Macmanus's testimony was more prejudicial than probative.  Doc. 147 at p. 4.   That is not the legal standard to exclude relevant testimony.   As noted above, the probative value of such testimony must be *substantially outweighed* by the danger of unfair prejudice.   The prejudicial nature of SA Macmanus's testimony comes nowhere close to outweighing its probative value, let alone substantially outweighing it.

5

As an initial matter, of course SA Macmanus's testimony was prejudicial to the defendant. SA Macmanus's testimony made it clear to the jury that the defendant's main attack on the evidence, the fact that the file formats and sizes did not match up between the images and videos found on the victim's phone and recorded in the Verizon records, was not the devastating blow the defense surely hoped it would be. Instead, it turns out there is a perfectly logical explanation as to why the file formats and sizes might not match up. That explanation (that Verizon often alters file formats and sizes to more efficiently transmit them over the network) had immense probative value that far outweighed its minor prejudicial effect.

The rest of Defendant's arguments here are somewhat unclear to the United States. It is unclear why Defendant cites *United States v. Medina-Copete*, 757 F.3d 1092 (10th Cir. 2014) for his argument on this point. In the portions cited by Defendant, the court in *Medina-Copete* was performing an analysis under Fed. R. Evid. 702—not Rule 403, which governs the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. *Medina-Copete* simply does not apply to Defendant's contention that SA Macmanus's testimony was more prejudicial than probative.

It is also unclear what exactly Defendant's argument is regarding Government's Exhibit 24. However, the United States objects to his characterization of that exhibit as "inaccurate." Doc. 147 at p. 4. Government's Exhibit 24 was a summary chart of the Verizon records put together by SA Macmanus to better help the jury understand those records. Verizon provided voluminous documents that together made up the Verizon records; these raw records contained special internal Verizon codes, were in UTC time (so had to be converted to Mountain Time), and had other complications that would have made it difficult for the jury to digest the

6

information.   SA Macmanus identified the most pertinent and helpful information and included that information in his summary, Gov. Ex. 24.   Defendant believed that different information was necessary, so included that information on Defendant's Exhibit 240.   That does not make Gov. Ex. 24 inaccurate.

### c. The probative value of TFO Weir's experiment was not substantially outweighed by the danger of unfair prejudice or confusion.

Lastly, Defendant objects to testimony by TFO Weir regarding the experiment he conducted by sending a video from an iPhone to a Samsung.   Doc. 147 at p. 5.   Defendant claims the experiment was "misleading," the experiment was "not a basis for an opinion of an expert," and, in a footnote, throws out a wild theory that the jury might have conducted experiments on their own.   *Id.*   Defendant's arguments are not compelling.

Defendant never explains in his motion what danger of unfair prejudice there was with TFO Weir's testimony, let alone why that danger substantially outweighed its probative value. Regardless, the United States will address each of Defendant's arguments below.

Starting with the claim that the experiment was misleading, Defendant suggests the experiment was misleading because nobody knows exactly what happened in the case at hand, *i.e.* nobody can say with absolute certainty that the file changed formats.   But TFO Weir never stated that because the file format was altered in his experiment, that means that the file format certainly was altered in the case at hand.   TFO Weir only testified that he conducted the experiment, and the result was that the file he sent changed formats.   That is not misleading. The jury was free to evaluate and weigh that information as it would any other evidence presented.

Next, Defendant claims the fact "that something happened once in an uncontrolled,

7

unsubstantiated manner is not a basis for an opinion of an expert." *Id.* On the contrary, that is a fine basis for an expert opinion. Returning to Fed. R. Evid. 703, an expert may base an opinion on facts or data that the expert has been made aware of or personally observed. Here, TFO Weir conducted an experiment and personally observed the results. Additionally, TFO Weir's experiment meets the qualifications under Fed. R. Evid. 702. TFO Weir was found to have the necessary scientific, technical, or other specialized knowledge to help the jury understand the evidence or determine a fact in issue. TFO Weir's experiment was based on sufficient facts or data, as demonstrated by TFO Weir's testimony that he observed the file formats of the file on the iPhone and the file received on the Samsung phone. There is no indication that the experiment was unreliable, as TFO Weir testified about each step he took to conduct the experiment; and there is no indication that TFO Weir applied any principle or method unreliably.

The United States is reluctant to even entertain Defendant's statements about 12 Angry Men and a potential experiment conducted by the jury during deliberation, but will do so for completeness. There is absolutely no indication that any such jury experiment occurred, and such a plot line has no relation whatsoever to the actual events in the case at hand. TFO Weir's experiment and related testimony is not in any way comparable to the movie scenario identified by the defendant, and the Court should ignore Defendant's comments here.

**IV.   CONCLUSION**

For the above reasons, the Court should deny Defendant's motion for acquittal or motion for a new trial and uphold his jury conviction.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

*Electronically filed on August 7, 2023*
MARISA A. ONG
R. ELIOT NEAL
Assistant United States Attorneys
200 N. Church Street
Las Cruces, NM 88001

I HEREBY CERTIFY that I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system which caused defense counsel to be served by electronic means on this day, August 7, 2023.

/s/
R. Eliot Neal
Assistant United States Attorney