IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,    )
    )
    Plaintiff,    )
    )
    vs.    )    Criminal Case 22-CR-1561 MIS
    )
**MICHAEL RIVERA**,    )
    )
    Defendant.    )

## UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PSR AND REQUEST TO ADD ADDITIONAL ENHANCEMENTS

The United States hereby responds to Defendant Michael Rivera's Objections to the Presentence Report.  Doc. 154.  According to the PSR, Rivera's total offense level is 43, his criminal history category is I, and his guidelines range is life.[1]  Rivera objects to several enhancements including: 1) an enhancement under USSG § 2G2.1(b)(6)(B)(I) for using a computer to entice his victim to commit a crime; 2) an enhancement under USSG § 3C1.1 for obstructing justice by instructing the victim to destroy evidence; and 3) an enhancement under USSG § 4B1.5(b)(1) for being a repeat and dangerous sex offender. *See id*.  As the United States will explain below, these enhancements were properly applied in this case and the Court should overrule River's objections.

Additionally, the Court should find that two additional enhancements under USSG § 2G2.1—which is the guideline that applies for Rivera's production of child pornography convictions—also apply.  First, the Court should apply an enhancement under USSG § 2G2.1(b)(2)(A) for the offense involving the commission of sexual act, as well as an

---

[1] The United States agrees that this is the appropriate guideline calculation and range for Rivera, however, as will be explained below, the United States believes additional enhancements under USSG § 2G2.1 should have been applied.

enhancement under USSG § 2G2.1(b)(5) because the defendant had supervisory control over the victim.  Admittedly, the addition of these enhancements would not change Rivera's current guidelines calculations, but because the district court is tasked with "begin[ning] all sentencing proceedings by correctly calculating the applicable Guidelines range," it remains an important task to ensure the guidelines have been properly calculated.  *Gall v. United States*, 552 U.S. 38, 49 (2007) (citation omitted).

## PROCEDURAL BACKGROUND

On April 6, 2022, Rivera was arrested pursuant to a federal criminal complaint which charged him with production of child pornography, in violation of 18 U.S.C. § 2251(a).  Doc. 1. Rivera was later indicted by a federal grand jury on various child exploitation charges.  Doc. 16. On June 27, 2023, a superseding indictment was returned charging Rivera with two counts of production of child pornography, in violation of 18 U.S.C. § 2251(a), and one count of enticement of a minor, in violation of 18 U.S.C. § 2422(b).  Doc. 121.  On July 6, 2023, Rivera proceeded to trial, and the jury returned a guilty verdict as to all counts.  Doc. 145.

On September 15, 2023, the United States Probation Office issued its presentence investigation report ("PSR").  Doc. 151.  In it, the probation officer assessed Rivera's total offense level to be 43, his criminal history category to be I, and his applicable guidelines range to be life.  PSR ¶ 82.  In reaching this guidelines range, the probation officer used USSG § 2G2.1, which is the guideline that applies to production of child pornography offenses.  The probation officer used two groups for each of the production of child pornography counts, because the counts involve different days and distinct conduct.  For the first group, the base offense level under USSG § 2G2.1 is 32.  PSR ¶ 27.  The probation officer then applied a two-level enhancement under USSG § 2G2.1 because the offense involved a minor who was between 12 and 16 years old.  PSR ¶ 28.  Next, the probation officer applied a two-level enhancement

pursuant to USSG § 2G2.1(b)(6)(B)(i), because Rivera used a computer to entice the victim to engage in sexually explicit conduct.  PSR ¶ 28.  The probation officer did not apply any other enhancements under USSG § 2G2.1.  The probation officer applied an obstruction of justice enhancement under USSG § 3C1.1 because Rivera told his victim to delete the pornographic photos and videos he had her take for him.  PSR ¶ 32.  According to the probation officer, the first group's adjusted offense level is a 38.  PSR ¶ 33.

The probation officer did the same calculations for the second group, resulting in an adjusted offense level of 38.  PSR ¶ 40.  The probation officer then applied a multiple count adjustment pursuant to USSG §§ 3D1.4(a), (b) and (c).  This resulted in a two-level increase to a combined adjusted offense level of 40.  PSR ¶ 44.  The probation officer then applied a five-level repeat and dangerous sex offender enhancement pursuant to USSG § 4B1.5(b)(1).  PSR ¶ 45.  This brought Rivera's offense level to 45, but pursuant to Chapter 5, Part A (comment n.2), his total offense level becomes 43.  PSR ¶¶ 45, 47.  Rivera's criminal history category is I, which results in a guidelines range of life.  PSR ¶ 82.

## RIVERA'S OBJECTIONS

### I.      Use of a Computer Enhancement (USSG § 2G2.1(b)(6)(B)(i))

Rivera objects to paragraph 29 and 36 of the PSR which reference an enhancement under USSG § 2G2.1(b)(6)(B)(i) for use of computer or interactive computer service to solicit a minor to engage in sexually explicit conduct.  However, the probation officer correctly applied the enhancement.

Under USSG § 2G2.1(b)(6)(B)(i), the enhancement applies "[i]f . . . the offense involved . . . the use of a computer or an interactive computer service . . . to . . . persuade, induce, entice, coerce . . .a minor to engage in sexually explicit conduct, *or to otherwise solicit participation by a minor* in [sexually explicit] conduct."  *Id*. (emphasis added).

3

According to Rivera, the USSG § 2G2.1(b)(6)(B)(i) enhancement (hereinafter "computer enhancement") is inapplicable because, he claims, the enhancement is not supported by empirical data. Thus, Rivera appears to make an argument that the guideline is flawed, and thus the Court should decline to apply the enhancement. As an initial matter, the 2013 Sentencing Commission Letter that Rivera references has to do with the computer enhancement under USSG § 2G2.2 (the applicable guideline for possession, receipt, and distribution of child pornography)—**not** USSG § 2G2.1 (the production of child pornography guideline).[2] Any findings referenced in that report pertain to a different enhancement for a separate guideline.

In any event, a review of the facts here establishes by a preponderance of the evidence that Rivera's conduct of communicating with the victim through text and via phone, where he urged that she take and send pornographic images and videos of herself to send to him, falls squarely within the conduct the computer enhancement is aimed at punishing.

To be clear, a cell phone is a "computer" as defined by 18 U.S.C. §1030(e)(1).[3] The evidence at trial clearly established that Rivera and the victim texted and talked on the phone, and that during those conversations, Rivera enticed the victim to take pornographic photos and

---

[2] On February 27, 2013, the Sentencing Commission released its Federal Child Pornography Offenses Report ("Report") to Congress, which examined federal sentencing policy in child pornography cases, **focusing primarily on non-production offenses under USSG § 2G2.2**. The Report can be found online at: https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf (last visited October 5, 2023).

[3] The guidelines incorporate the definition of "computer" from 18 U.S.C. § 1030(e)(1). *See* USSG § 2G2.1 cmt. n.1. That statute, in turn, defines "computer" as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions ... but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device[.]"

videos of herself engaged in sexually explicit conduct.[4]

Moreover, a review of cases where appellate courts have upheld the application of the computer enhancement supports the conclusion that the enhancement should apply here.

For example, in *United States v. Reaves*, 253 F.3d 1201, 1203 (10th Cir. 2001), the Tenth Circuit upheld the prior version of the computer enhancement[5] where a defendant, who had been convicted of producing child pornography, used his computer to show victims sexually explicit pictures both before and after their participation in sexually explicit conduct.

There, the Tenth Circuit discerned that in enacting the computer enhancement, the Sentencing Commission was driven by Congress's concerns "about computers and child pornography" and concluded the Sex Crimes Against Children Prevention Act's legislative history "clearly provided the foundation upon which the Commission built [the computer enhancement]." *Id*. at 1204. The Tenth Circuit cited to the legislative history of the Sex Crimes Against Children Prevention Act, specifically emphasizing statements from the House Committee on the Judiciary that voiced a "'particular concern [for] the fact that pedophiles may use a child's fascination with computer technology as a lure to drag children into sexual relationships.'" *Id*. at 1205 (quoting H.R.Rep. No. 104–90, at 3–4 (1995)). In light of this, the Tenth Circuit rejected a narrow[6] reading of the computer enhancement "given Congress's broad

---

[4] As the Court may recall, the pictures and videos consisted of the minor exhibiting a lascivious exhibition of her genitals and masturbating herself with an object, both of which meet the definition of sexually explicit conduct pursuant to 18 U.S.C. § 2256(2).

[5] The prior version of USSG § 2G2.1(b)(3) provided "If a computer was used to solicit participation by or with a minor in sexually explicit conduct for the purpose of producing sexually explicit material, increase by 2 levels."

[6] In *Reaves*, the defendant tried to argue the enhancement should only apply in situations where an offender used to computer to *directly request* participation from the minor, rather than lure or entice participation from the minor. *Id*.

concerns." *Id.*; *see also United States v. Raiburn*, 20 F.4th 416, 425 (8th Cir. 2021) (application of computer enhancement properly applied where a defendant requested sexually explicit photos from minor using a cell phone); *United States v. Turner*, 756 F. App'x 576, 580-81 (6th Cir. Nov. 28, 2018) (unpublished) (upholding application of computer enhancement where a defendant used his cell phone and social media to communicate directly with minor to exchange nude pictures of themselves and to convince her to participate in sexual conduct); *United States v. Zagorski*, 807 F.3d 291, 293-94 (D.C. Cir. 2015) (concluding that the district court properly applied the computer enhancement when a defendant sent sexually explicit material of a minor to another person and also solicited that person to engage in sexual activity with a minor); *United States v. Roman-Portalatin*, 476 F. App'x 868, 869-70 (1st Cir. Apr. 25, 2012) (Souter, J., sitting by designation) (unpublished) (concluding that, as an alternate enhancement, the computer enhancement could have been applied when a defendant used a computer to induce a minor to have sex with him and to send a defendant explicit photos of herself).

Accordingly, the computer enhancement was correctly applied.

## II. *Obstruction of Justice Enhancement Under USSG § 3C1.1*

Rivera objects to the imposition of this enhancement, arguing that the fact that it is based solely on the victim's statements at trial renders the reliability of the basis for the enhancement insufficient.  Rivera is wrong.  Pursuant to USSG § 3C1.1, a two-level enhancement applies if "(1) the defendant willfully obstructed or impeded, or attempted to obstruct of impede, the administration of justice with respect to the investigation, [or] prosecution . . . and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct . . . ." *Id.*  Here, the probation officer applied the enhancement because Rivera instructed the victim to delete the pictures and videos he had her produce of herself.  This type of situation is specifically included in the "Examples of Covered Conduct" in the Commentary section of the

enhancement.  Specifically, pursuant to Application Note 4(D), examples of covered conduct includes "destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding . . . ."  While "official investigation" or "judicial proceeding" are not further defined in the commentary, Application Note 1 specifically states that "obstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by the guideline if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction."

Here, Rivera's conduct of directing the victim to delete pornographic images and videos she took at his urging was clearly an attempt by him to thwart any sort of investigation or prosecution for his crime.  Additionally, the Court need only find this conduct has been proven by a preponderance of the evidence.  Accordingly, because the Court sat through the trial and witnessed the victim testify, the United States requests the Court make a specific finding that the victim's testimony regarding Rivera's conduct of having her delete the pictures and videos— which were the basis of his crimes of conviction—was credible and has been established be a preponderance of the evidence.[7]

     III.     *Repeat and Dangerous Sex Offender Enhancement Under USSG § 4B1.5(b)(1)*

Rivera objects to the five-level enhancement under USSG § 4B1.5(b)(1), arguing that it allows impermissible double-counting and alleges that the enhancement violates due process.  Rivera does not explain why this is the case, but simply makes these assertions in a conclusory manner.  Perhaps his argument is that he should not be enhanced for his conduct of having sex

---

[7] Indeed, the jury's guilty verdict for all charged counts supports the inference they believed the victim on this point.

with his victim when she was 12 because that was not charged conduct?[8]  Regardless of what

Rivera's argument is, the enhancement was properly applied in this case.

Under USSG § 4B1.5(b)(1), "[i]n any case in which the defendant's instant offense of

conviction is a covered sex crime, neither § 4B1.5 nor subsection (a) of this guideline applies,

and the defendant engaged in a pattern of activity involving prohibited sexual conduct: (1) the

offense level shall be **5** plus the offense level determined under Chapters Two and Three."  *Id*.

The application notes make clear that a "covered sex crime" is an offense perpetrated

against a minor under "chapter 110 [of title 18, United States Code]."  USSG § 4B1.5 app. n. 2.

Production of child pornography under 18 U.S.C. § 2251 is the first offense listed in Chapter 110

of title 18, Sexual Exploitation and Other Abuse of Children.  Accordingly, Rivera's offense of

conviction is a covered sex crime.  Additionally, neither § 4B1.5 nor subsection (a) of this

guideline applies.

Next, Rivera engaged in a pattern of activity involving prohibited sexual conduct.  This is

a two-part determination.  First, the application notes explain that "prohibited sexual conduct"

means, *inter alia*, "the production of child pornography."  USSG § 4B1.5 app. n. 4(A).

Additionally, "prohibited sexual conduct" also means "any offense described in 18 U.S.C. §

2426(b)(1)(A) or (B)."  USSG § 4B1.5 app. n. 4(A).  Under 18 U.S.C. § 2426(b)(1)(B), any state

crime conduct that would qualify as a violation of any statute under Chapter 109A of title 18 if

---

[8] This type of argument, of course, ignores the Supreme Court's firm recognition in that:

> It has been uniform and constant in the federal judicial tradition for the sentencing judge
> to consider every convicted person as an individual and every case as a unique study in
> the human failings that sometimes mitigate, sometimes magnify, the crime and the
> punishment to ensue. *Underlying this tradition is the principle that the punishment
> should fit the offender and not merely the crime*.

*Pepper v. United States*, 562 U.S. 476, 487–88 (2011) (citations and quotations omitted)
(emphasis added).

committed on federal land counts.  *Id.*  Here, Rivera engaged in illegal sexual conduct with the victim that meets this definition.

Based on the facts of this case, there are multiple instances of Rivera engaging in prohibited sexual conduct with the victim.  But, to simplify things, the Court should focus on three different examples of Rivera engaging in prohibited sexual contact with the victim.  The first instance is when Rivera had sex with the then-twelve-year-old victim in March 2021.[9]  The other two instances relate to his conduct on December 4, 2021—which formed the basis of count 2 of the superseding indictment when he produced child pornography—and his conduct on December 12, 2021—which formed the basis of count 3, when he again produced child pornography.  Each of these three separate instances clearly fall within the applicable definition of prohibited sexual conduct as defined by the enhancement.

The second step involves determining whether the offender engaged in a "pattern of activity."  The application notes clarify that "the defendant engaged in a pattern of activity involving prohibited sexual conduct if *on at least two separate occasions*, the defendant engaged in prohibited sexual conduct with a minor."  USSG § 4B1.5 app. n. 4(B)(i) (emphasis).  Here, because Rivera had sex with a twelve-year-old, and then had that same victim send him photos on at least two different dates, the enhancement applies.  *United States v. Ward*, 732 F.3d 175, 185 (3rd Cir. 2013) (upholding district court's application of USSG § 4B1.5(b)(1) enhancement when Defendant had pled guilty to two counts of production of child pornography); *Untied States*

---

[9] As the United States laid out in its Notice of Intent to Introduce Evidence Pursuant to Federal Rules of Evidence 414 and 404(b) (Doc. 71), Rivera's conduct of having sex with the victim when she was twelve falls within conduct prohibited by 18 U.S.C. § 2243, which is contained in 18 U.S.C. chapter 109A.  Title 18 U.S.C. § 2243, in relevant part, makes it a crime for any adult who is more than four years older than the minor to "knowingly engage in a sexual act with another person who—(1) has attained the age of 12 years but has not attained the age of 16 years."

*v. Pappas*, 715 F.3d 225, 229 (8th Cir. 2013) (rejecting Defendant's argument that USSG § 4B1.5(b)(1) can only be applied when Defendant abused more than one minor; upholding district court's application of enhancement when Defendant pled guilty to one count of production of child pornography and there was evidence Defendant had sexually abused the same minor numerous times); *United States v. Broxmeyer*, 699 F.3d 265, 284-85 (2nd Cir. 2012) (upholding district court's application of § 4B1.5(b)(1) enhancement when Defendant was convicted of one count of production of child pornography and there was evidence Defendant had sexually abused another minor); *United States v. Corp*, 668 F.3d 379, 391 (6th Cir. 2012) (same).

      Accordingly, the enhancement was correctly applied.

      *IV.    Objection to Counts of Conviction Being Separate Groups*

      Rivera appears to object to his production counts of conviction being calculated as two separate groups.[10]  Pursuant to USSG § 3D1.2, multiple counts of conviction are treated differently depending on the offense of conviction.  This guideline essentially dictates when and whether different counts of conviction should be grouped together or treated as sperate groups for purposes of determining the appropriate guideline sentence.  Offenses that are explicitly excluded from grouping—meaning the counts should be treated as separate groups and not grouped together—include offenses that are governed by USSG § 2G2.1.  Here, Rivera was convicted of two counts of production of child pornography (for conduct that occurred on two different days), and the guideline that applies to that offense is USSG § 2G2.1.  *See* USSG § 3D1.2(d).  Accordingly, the probation officer correctly treated those offense as separate groups.

---

[10] Rivera titles his objection, "Objection to multiple counting of one act."  This completely discounts the fact that the two production counts that Rivera was convicted of at trial encompass separate pictures and videos that were produced on two completely different days.

## UNITED STATES' OBJECTIONS

The United States respectfully submits that the following enhancements also apply in this case.

### I.       *Supervisory Control Pursuant to USSG § 2G2.1(b)(5)*

Under USSG § 2G2.1(b)(5), a two-level enhancement is warranted if "the minor was otherwise in the custody, care, or supervisory control of the defendant."  The application notes state that the enhancement:

> *is intended to have broad application* and includes offenses involving a victim less than 18 years of age entrusted to the defendant, whether temporarily or permanently. For example, teachers, day care providers, baby-sitters, or other temporary caretakers are among those who would be subject to this enhancement. In determining whether to apply this enhancement, the court should look to the actual relationship that existed between the defendant and the minor and not simply to the legal status of the defendant-minor relationship.

USSG § 2G2.1, app. n. 5 (emphasis added).  The application notes clearly contemplate that the enhancement will apply in situations where someone who has close access to a child—such as Rivera—uses their position to exploit supervisory control over minors to help facilitate their crime.

Here, the evidence at trial established that Rivera was dating the victim's aunt and developed a very close relationship with the victim.  This included gaining the victim's family's trust so that there were situations were Rivera could be alone with the victim because she was in his care.  Specifically, the victim testified that she and Rivera would go on drives together, and she even stated she would drive him to work.  *See United States v. Muslim*, 944 F.3d 154, 169 (4th Cir. 2019) (finding the § 2G1.3(b)(1)(B) enhancement was correctly applied when, *inter alia*, "[t]he victim testified she relied on Defendant to drive her to high school.)  At the very least, Rivera had the same kind of "care" over the victim as the temporary caretaker example the commentary provides. Like a temporary caretaker, Rivera was trusted with the victim. Cf. USSG

§ 2G2.1 cmt. n.5(A) (noting the enhancement "includes offenses involving a minor entrusted to the defendant"). The facts in this case included that the victim's family trusted Rivera to care for the victim and be alone with her, which is what lead to his opportunity to sexually abuse her. *United States v. Isaac*, 987 F.3d 980, 992 (11th Cir. 2021) (enhancement applied with defendant had gained family's trust and victim has been in the defendant's care which allowed him to abuse victim); s*ee also United States v. Gonyer*, 761 F.3d 157, 170–71 (1st Cir. 2014) (affirming the enhancement when the defendant's position of work supervisor over the victim was "readily analogized to the position occupied by a teacher or baby-sitter"); *United States v. Beasley*, 688 F.3d 523, 535 (8th Cir. 2012) (affirming the enhancement when the defendant had "at least as much 'care, custody, or supervisory control' over th[e] minors as would a teacher, baby-sitter, or day care provider"); *United States v. Alfaro*, 555 F.3d 496, 498 (5th Cir. 2009) (affirming the enhancement when the government had argued to the district court that "if the victim had injured herself, [the defendant] would have taken her to the emergency room, would have signed the applicable forms, and would have requested for her to receive treatment," so "the victim was under [the defendant's] custody and care and control just as much as if he were her babysitter") (quotation marks omitted).

I.      *Sexual Contact Under USSG § 2G2.1(b)(2)(A)*

Under USSG § 2G2.1(b)(2)(A), a two-level enhancement is warranted if the offense involved "the commission of a sexual act or sexual contact." The application notes state that "sexual act" has the meaning given to the term in 18 U.S.C. § 2246(2). USSG § 2G2.1, app. n. 2. Title 18 U.S.C. § 2246(2) states, the term "sexual act" means, *inter alia*, "contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight." This language clearly covers the act of Rivera having sex with the victim in March 2021.

While the sexual act did not occur during the commission of the offense of conviction, the enhancement's use of the word "offense" covers all relevant conduct leading up to the offense of conviction. The term "offense" as used throughout the Guidelines is defined to include "the offense of conviction and all relevant conduct under § 1B1.3." U.S.S.G. § 1b1.1 cmt. n.1(I). In § 1B1.3, "relevant conduct" is defined as "all acts . . . committed . . . by the defendant . . . that occurred during the offense of conviction, [or] in preparation for that offense . . .," and "all harm that resulted from the acts [committed by the defendant]." USSG § 1B1.3(a)(1)(A), (a)(3). "Therefore, the enhancement under § 2G2.1(b)(2)(A) applies whenever sexual contact (or sexual acts) can be considered relevant conduct to the offense of conviction." *United States v. King*, 979 F.3d 1075, 1082–83 (5th Cir. 2020). Here, the Court heard ample testimony from the victim at trial regarding Rivera's grooming of the victim that lead to him first having sex with her, which then put him in a better position to entice and persuade her to take and send pornographic pictures and videos of herself to Rivera. The United States requests the Court make a finding that Rivera's molestation of the victim in March 2021 is relevant conduct because it occurred in preparation for his offense of conviction. Additionally, the victim suffered harm as a result of Rivera's conduct of perpetrating a sexual act against her, which lead to her being more compliant with his later efforts to get her to take pornographic pictures.

Accordingly, the United States requests this enhancement be applied as well.

## CONCLUSION

For the reasons stated above, the Court should overrule Rivera's objections to the PSR and find the enhancement at issue were properly applied. The Court should also apply the additional USSG § 2G2.1 enhancements laid out above.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

*Electronically filed on 10/20/23*
MARISA A. ONG
R. ELIOT NEAL
Assistant United States Attorneys
200 N. Church Street
Las Cruces, NM 88001

filed the foregoing with the Clerk of the
Court using the CM/ECF system which
will send electronic notification to defense
counsel of record.

_____/s/_____
MARISA A. ONG
Assistant United States Attorney